UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES M. SACHS, JR.,

                                        Plaintiff,

                                                                    <u>DECISION AND ORDER</u>

                                                                    06-CV-6460L

                        V.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,


                                        Defendant.
_____

## INTRODUCTION

Plaintiff, James M. Sachs, Jr., brings this action under 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("the Commissioner") that he is not disabled

under the Social Security Act, and therefore, is not entitled to Social Security disability benefits.

Plaintiff originally applied for Social Security disability benefits on June 25, 2004. (Tr. 13).[2]

He alleged that he had been disabled since April 6, 2003, due to cervical and lumbar disc problems

and ulcerative colitis. (Tr. 47). Plaintiff's application was initially denied. Plaintiff then requested

a hearing before an administrative law judge ("ALJ"). Upon returning to work on June 6, 2005,

_____

[1] Plaintiff's complaint names former Commissioner of Social Security Joanne B. Barnhart
as the defendant. Michael J. Astrue, the current Commissioner, automatically is substituted as
the defendant pursuant to Fed. R. Civ. P. 25(d)(1).

[2] "Tr." refers to the transcript of the administrative record.

plaintiff amended his application and requested a closed period of disability from April 6, 2003 through June 6, 2005.  (Tr. 13).

The hearing was held before ALJ Diane Moskal via videoconference on August 11, 2005. (Tr. 13).  ALJ Moskal determined that plaintiff was not disabled under the Act (Tr. 13-20), and her decision became the final decision of the Commission on July 21, 2006 when the Appeals Council denied plaintiff's request for review.  (Tr. 4-7).  This appeal followed.

The plaintiff has moved for judgment on the pleadings.  (Dkt. #4).  The Commissioner has cross-moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. #7).  As discussed below, the Commissioner's decision is reversed, and the matter is remanded for further proceedings.

## FACTUAL BACKGROUND

Familiarity with the pertinent facts, summarized below, is presumed.

Plaintiff was born July 26, 1975 and is presently thirty-three years old.  (Tr. 361-362). Immediately prior to his alleged disability onset date, plaintiff was employed as a patient care technician at a hospital from 2001 through April 2003. (Tr. 367).  The job required him to take notes for nurses, lift and move patients, and monitor patients recovering from surgery.  *Id*.

On May 23, 2002, plaintiff was evaluated by his primary care physician, family internist Dr. Bruce Hira, for complaints of pain in his neck, left shoulder, and lower back, radiating into his right leg, all stemming from a car accident.  (Tr. 277-278).  Dr. Hira diagnosed cervical sprain and lumbosacral sprain, prescribed painkillers, and advised plaintiff to seek chiropractic treatment.  (Tr.

278).  On July 9, 2002, plaintiff returned to Dr. Hira with complaints of intensified lower back pain.

An MRI of plaintiff's spine showed bulging discs. (Tr. 276).

On February 1, 2003, after unsuccessfully treating with a physiatrist and pain management

specialist, plaintiff began treating with neurosurgeon Dr. Seth Zeidman for neck, back and leg pain.

(Tr. 222-223).  Plaintiff reported that he had attempted several means of pain management, including

physical therapy, chiropractic treatment, a TENS unit, exercise, and cortisone shots.  His history of

ulcerative colitis was also noted.   Review of an MRI of plaintiff's lumbar spine showed disc

degeneration at L5-S1.  (Tr. 223).  Dr. Zeidman diagnosed lumbar disc degeneration (Tr. 223).

From February 2003 through January 2005, plaintiff continued to treat with Dr. Zeidman for

back and neck pain.  On February 26, 2003, plaintiff underwent a cervical spine MRI, which revealed

significant spondylosis and mild foraminal encroachment (spinal degeneration and deformity of

vertebral joints, commonly associated with aging), particularly at C4-5 through C6-7, with small

protrusions contacting the spinal cord at C4-5.  On May 28, 2003, plaintiff underwent a multi-level

anterior cervical discectomy and fusion.  (Tr. 134).  The surgery revealed significant cervical disc

damage at the C6-C7 level, and did not appreciably ease plaintiff's pain or increase the limited range

of motion in his back and neck.  X-rays and MRIs performed in July 2003 showed anterior fusion

from C4-C7 with bony plugs in the interspaces, and a small central disc bulge at L5-S1.  (Tr. 212,

227).

A hearing before the ALJ was held via videoconference on August 11, 2005.  (Tr. 13).

Plaintiff testified that his activity during the closed period had been limited, and that he had primarily

been cared for by his mother.  For the first year to year-and-a-half following the motor vehicle

accident, plaintiff had been unable to drive because of the inability to turn his head.  (Tr. 362).

Although he returned to his prior work as a patient care technician at the medium exertional level

on June 6, 2005, plaintiff claimed that he could not have returned any earlier due to his reliance on

higher levels of painkillers.  (Tr. 15-16).  Prior to returning to work, plaintiff took approximately six

Vicodin per day, and would awaken every 60-90 minutes at night due to pain, which was alleviated

through medications and heating pads.  (Tr. 379).

A vocational expert, Daniel Rappucci, characterized plaintiff's prior relevant work as a

patient care technician, and prior to that as a machine operator, as medium and semi-skilled.  (Tr.

366-381).  The ALJ asked Rappucci whether an individual of plaintiff's background and education,

with the ability to perform light work with a sit-stand option, could perform work existing in

significant numbers in the national economy.  (Tr. 383-384).  Rappucci replied that he could, and

identified as potential jobs the positions of food checker, order clerk, and storage rental clerk.  (Tr.

382-385).  In response to additional questions, Rappucci opined that an individual who was limited

to sitting or standing for one hour each per day (and thus capable of only a two-hour total workday)

could not perform any work.  (Tr. 385-386).

## DISCUSSION

### I.  Standard for Determining Disability

A person is considered disabled when he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  In order to determine whether a claimant

is disabled, an ALJ employs a five-step inquiry:

> The first step determines whether the claimant is engaged in 'substantial gainful
> activity.'  If he is, benefits are denied.  If he is not engaged in such activity, the
> process moves to the second step, which decides whether the claimant's condition or
> impairment is 'severe' – i.e., one that significantly limits his physical or mental ability
> to do basic work activities.  If the impairment is not severe, benefits are denied.  If
> the impairment is severe, the third step determines whether the claimant's
> impairments meet or equal those set forth in the 'Listing of Impairments'.  . .
> contained in subpart P, appendix 1, of the regulations. . . . If the claimant's
> impairments are not listed, the process moves to the fourth step, which assesses the
> individual's 'residual functional capacity' (RFC); this assessment measures the
> claimant's capacity to engage in basic work activities.  If the claimant's RFC permits
> him to perform his prior work, benefits are denied.  If the claimant is not capable of
> doing his past work, a decision is made under the fifth and final step whether, in light
> of his RFC, age, education, and work experience, he has the capacity to perform other
> work.  If he does not, benefits are awarded.

*Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986) (citations omitted).  It is well-settled that

plaintiff bears the burden of proof at the first four steps of the analysis.  At the fifth and final stage

of this process, the burden shifts to the Commissioner to prove that the claimant is capable of

performing other work that exists in the national economy.  *See  Schaal v. Apfel*, 134 F.3d 496, 501

(2d Cir. 1998); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

## II.      The ALJ's Decision

At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity

during the relevant closed period, between April 6, 2003 and June 6, 2005.  The ALJ concluded that

plaintiff had severe impairments, consisting of neck and back disorders, that did not meet or equal

a listed impairment.  At step four, the ALJ concluded that plaintiff could not perform his past

relevant work, but nonetheless retained the RFC to perform light or sedentary work.  Specifically,

the ALJ found that during the closed period, plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, could sit for two hours and stand or walk for six hours during an eight-hour workday, had no limitations in his ability to push, pull or manipulate objects by hand, and could occasionally climb stairs, ramps, ladders, ropes or scaffolds, stoop, kneel, crouch, or crawl. (Tr. 16). At step five, the ALJ utilized the Medical-Vocational Grid Rules and heard testimony from a vocational expert, and concluded, based on plaintiff's age, education, and work experience, that plaintiff was not disabled because he retained the RFC to perform work at the light and sedentary exertional levels during the closed period. (Tr. 19-20).

## III.  Standards of Review

The Commissioner's decision that plaintiff was ineligible to receive benefits must be affirmed if it applies the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g); *Shaw v. Carter*, 221 F.3d 126, 131 (2d Cir. 2000); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force," a district court cannot not substitute its own judgment for that of the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled.").

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *accord Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). The Court must determine if the Commissioner's decision applied the correct legal standards in finding that plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Only after finding that the correct legal standards were applied should the Court consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). "'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'" *Schaal*, 134 F.3d at 504 (quoting *Johnson*, 817 F.2d at 986).

## IV. Plaintiff's Alleged Disability

I find that the Commissioner's decision regarding plaintiff's disability is not supported by substantial evidence, and that the matter must be remanded for further proceedings. I agree with the plaintiff that the ALJ erred when weighing the opinion of plaintiff's treating physician with respect to his exertional limitations. Furthermore, the ALJ's finding that there were jobs in the economy that plaintiff could perform with his limitations is not supported by substantial evidence.

### A.    Treating Physician's Opinion

The ALJ erred by failing to give controlling weight to the opinion of plaintiff's treating neurosurgeon, Dr. Zeidman. It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent

with other substantial record evidence." *Shaw*, 221 F.3d at 134; *see* 20 C.F.R. § 404.1527(d)(2).  In

determining what weight to give a treating physician's opinion, the Commissioner must consider:

(1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3)

the evidence presented to support the treating physician's opinion; (4) whether the opinion is

consistent with the record as whole; and (5) whether the opinion is offered by a specialist.  20 C.F.R.

§ 404.1527(d).  Further, the ALJ must articulate his reasons for assigning the weight that he does

accord to a treating physician's opinion.  *Shaw*, 221 F.3d at 134; *see also Snell v. Apfel*, 177 F.3d

128, 133 (2d Cir. 1999) ("[f]ailure to provide good reasons for not crediting the opinion of a

claimant's treating physician is a ground for remand.") (internal quotations omitted).

On December 29, 2004, Dr. Zeidman completed a lumbar spine impairment questionnaire.

He diagnosed plaintiff with lumbar disc degeneration and cervical disc herniation with myelopathy.

Plaintiff's prognosis was guarded.  (Tr. 339).  Plaintiff had a limited range of motion in the neck and

back to 20 degrees, tenderness in the neck and back, neck and back muscle spasms, abnormal gait,

and intermittent arm and leg weakness.  (Tr. 339-340).  Dr. Zeidman opined that plaintiff could sit,

stand and walk continuously for less than one hour in an 8-hour workday, and moreover needed to

rise and move around every 10-15 minutes when sitting.  (Tr. 342).  Plaintiff was limited to lifting

and carrying up to 5 pounds occasionally.  (Tr. 342).  Dr. Zeidman noted that plaintiff's pain and

other symptoms frequently interfered with his attention and concentration, and reduced his ability

to keep his neck in a constant position, rendering him incapable of a job that required him to look

continuously at a computer screen or down at a desk.  (Tr. 344).  Plaintiff also needed to avoid

temperature extremes, humidity and heights, and was unable to push, pull, kneel, bend or stoop.  (Tr.

344).  Dr. Zeidman opined that plaintiff was therefore unable to work at that time, noting that his

answers to the questionnaire were based upon plaintiff's own report.  (Tr. 344).

On January 6, 2005, Dr. Zeidman completed a narrative summary of plaintiff's condition.

He noted that since the motor vehicle accident, plaintiff had experienced substantial difficulty with

his neck and lower back and had undergone an anterior cervical discectomy and fusion at C5-6 and

C6-7.  Nonetheless, plaintiff continued to have significant pain in his neck and lower back, for which

surgery was not advisable.  Plaintiff remained "temporarily totally disabled . . . and has very little

improvement in his overall function."  (Tr. 337).

Dr. Zeidman completed a second lumbar spine impairment questionnaire on August 22, 2005,

specifically evaluating plaintiff's condition during the period of April 2003 through June 2005.  (Tr.

346-353).  Again, the questionnaire included diagnoses of lumbar disc degeneration and cervical

spine herniation and clinical findings of limited range of motion in the neck and back to 20 degrees

with tenderness and muscle spasms, abnormal gait and extremity weakness.  (Tr. 347-348).  Dr.

Zeidman referred to a CT scan of plaintiff's cervical spine and an MRI of the lumbar spine to support

his diagnoses.  (Tr. 348).  Dr. Zeidman described plaintiff's limitations as he had on the prior

questionnaire, except for indicating that during the period in question plaintiff could occasionally

lift or carry up to 10 pounds, and concluding that plaintiff was "partially disabled" (Tr. 351).

The ALJ rejected Dr. Zeidman's questionnaires, citing the fact that the initial questionnaire

questions had been "asked of patient," rendering the entire questionnaire a self-report which was

entitled to little weight.  The ALJ also rejected Dr. Zeidman's second questionnaire, which made a

similar assessment but was specific to the closed period for which disability was claimed, and cited

objective medical findings.   The ALJ found that the credibility of the later questionnaire was undermined because: (1) plaintiff's attorney had stated to Dr. Zeidman that "the opinion of a treating physician is binding on the government . . . in the absence of substantial evidence to the contrary"; and (2) Dr. Zeidman had not been notified that plaintiff had returned to nurse's aide work at the medium exertional level on or after June 6, 2005.  (Tr. 18).  Instead, the ALJ chose to rely instead upon the assessments of consulting physician Dr. Sirotenko, who found on July 16, 2004 that plaintiff was able to perform work so long as he had frequent opportunities to alternate between sitting, standing and walking, and was not required to lift objects beyond a moderate degree of physical exertion.  (Tr. 17, 328). The ALJ also found support for her conclusions in the opinion of a state agency disability examiner, who although not a physician, opined that plaintiff could perform light work.  (Tr. 17).  Nonetheless, the ALJ cited no evidence of record to contradict Dr. Zeidman's opinion.

I find that the ALJ's conclusion is not supported by substantial evidence.   A treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence.  *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999).  If an ALJ opts not to afford controlling weight to the opinion of a treating physician, the ALJ must consider: (1) the examining relationship; (2) the extent of the treatment relationship; (3) medical support for the opinion: (4) consistency; and (5) the physician's specialization, along with any other relevant factors. 29 C.F.R. §404.1527(d)(2).  An ALJ's failure to apply these factors and provide reasons for the weight given to the treating physician's report is reversible error.  *See Snell v. Apfel*, 177 F.3d 128,1 34 (2d Cir. 1999); *Schall v. Apfel*, 134 F.3d 496 (2d Cir. 1998).

The ALJ's determination that Dr. Zeidman's opinion was not entitled to controlling weight failed to properly consider the relevant factors and is unsupported by the evidence of record. *See* 20 C.F.R. § 404.1527(d)(2).  Dr. Zeidman had a well-established, ongoing and consistent treating relationship with plaintiff that included frequent examinations beginning with the spring 2003 motor vehicle accident and continuing through the date of plaintiff's initial application.  Further, the record contains appreciable objective medical evidence to support Dr. Zeidman's opinions concerning plaintiff's limitations, including multiple X-rays, CT scans, MRI scans, surgical records, and diagnoses and treatment notes from a number of other treating and examining physicians, all of which are substantially duplicative of Dr. Zeidman's objective findings.  Dr. Zeidman is a board certified neurosurgeon, and as such, his expertise is specific to plaintiff's condition.  *See Balsamo*, 142 F.3d at 80-81 (ALJ erred by failing to accord controlling weight to treating physician's opinions where there was no other medical opinion in the record that disputed their findings).  While the ALJ correctly noted that Dr. Zeidman had not examined plaintiff after January 2005, rendering his opinion concerning plaintiff's condition during the final six months of the closed period somewhat speculative (Tr. 18), there is no evidence that plaintiff had improved, or was expected to improve, during that time.  To the contrary, plaintiff's medical records variously described his prognosis as "poor" and "guarded."  (Tr. 328, 339).

Moreover, while the ALJ was skeptical of the fact that plaintiff had improved sufficiently to perform nursing work at the medium exertional level within a year of Dr. Zeidman's second assessment, the fact that plaintiff was physically able to return to work on June 6, 2005 does not, by itself, suggest that plaintiff should or could have returned to work at some earlier date.  Indeed,

plaintiff's attempts to return to work immediately following the motor vehicle accident and in June

2005, taken together with his consistent record of employment prior to the alleged disability onset

date, should have been considered as probative of his credibility. *See Janas v. Barnhart*, 451 F.

Supp. 2d 483, 501 (W.D.N.Y. 2008) (where plaintiff worked multiple jobs both prior to and after

the closed period, ALJ should have credited her work history as probative of her credibility), *citing*

*Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) ("[a] claimant with a good work record is

entitled to substantial credibility when claiming an inability to work because of a disability").

Finally, the fact that Dr. Zeidman had been informed, correctly or not, about plaintiff's

burden to prove his disability, or that he may not have been aware of events outside the closed period

such as plaintiff's eventual return to work (a fact which the ALJ appears to have speculatively

assumed), does not affect the credibility of his findings relative to plaintiff's RFC during the closed

period.

### B.     The Commissioner's Burden to Prove That Plaintiff Can Perform Other Work

At step five of the disability determination, the Commissioner has the burden of proving that

there were other jobs that plaintiff could perform, in light of his age, education, work experience,

and ability to perform less than the full range of light and/or sedentary work. *See Draegert v.*

*Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002).  The Commissioner failed to meet that burden here

when she relied on testimony by a vocational expert to determine that plaintiff was not disabled

during the closed period.

As set forth above, the vocational expert's testimony was based upon the ALJ's hypothetical

supposition that plaintiff could perform the full range of light and sedentary work, albeit modified

to include a sit/stand option.  As such, the ALJ's finding that plaintiff could perform other jobs did not incorporate the additional limitations with respect to lifting, carrying, neck movement and concentration identified by plaintiff's treating physician, and thus the record lacks substantial evidence that plaintiff could perform other work during the period in question.  *See Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980);  *Mathews v. Barnhart*, 220 F. Supp. 2d 171, 175-76 (W.D.N.Y. 2002).

Based on the foregoing, the Commissioner has failed to meet her burden to explain why the opinion of plaintiff's treating physician was not afforded controlling weight and why plaintiff's testimony concerning his limitations was wholly discounted, or to demonstrate that plaintiff could have performed any work that existed in the economy during the closed period.   Under the circumstances, remand for further proceedings is warranted.   "'Where there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" courts remand cases to the Commissioner for further development of the evidence.  *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996), *quoting Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980).  This is not a case "[w]here the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose . . . ." *Martinez v. Commissioner*, 262 F.Supp.2d 40, 49 (W.D.N.Y.2003).  *See also Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000).  Remand is required so that the Commissioner can apply the proper legal standards in weighing the evidence of record – specifically, affording the opinions of Dr. Zeidman controlling weight – and to obtain additional evidence and clarification, as she deems appropriate, from plaintiff's treating physicians concerning the final six months of the closed period.  *See Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir.1999).

**CONCLUSION**

Plaintiff's motion for summary judgment (Dkt. #4) is granted.  The Commissioner's cross-motion for summary judgment (Dkt. #7) is denied.  The Commissioner's decision that plaintiff was not disabled during the period in question is reversed pursuant to 42 U.S.C. § 405(g), and the case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge


Dated: Rochester, New York
       July 29, 2008.